# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are covered persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, and WILLIAM SULLIVAN,<br><br>              Plaintiffs,<br><br>      v.<br><br>CONSTELLA INTELLIGENCE, INC., RICHARD ROES 1–10, *fictitious names of unknown individuals* and ABC COMPANIES 1–10, *fictitious names of unknown entities*,<br><br>              Defendants. | Case No. 2:24-cv-10571<br><br>**NOTICE OF REMOVAL** |

**TO**:   United States District Court
        District of New Jersey
        Martin Luther King Building & U.S. Courthouse
        50 Walnut Street
        Newark, NJ 07102

**WITH NOTICE TO:**

| | |
|---|---|
| Clerk of the Superior Court<br>Superior Court of New Jersey<br>Essex County Civil Division<br>Essex County Justice Building<br>465 Dr. Martin Luther King, Jr. Blvd.<br>Newark, NJ 07102 | Hon. Mayra V. Tarantino<br>Superior Court of New Jersey<br>Essex County Civil Division<br>Essex County Justice Building<br>465 Dr. Martin Luther King, Jr. Blvd., Floor 2<br>Newark, NJ 07102 |

1

Rajiv D. Parikh
Kathleen Barnett Einhorn
Jessica A. Merejo
PEM LAW LLP
1 Boland Drive, Suite 101
West Orange, NJ 07052

Ekwan E. Rhow
Elliott C. Harvey Schatmeier
BIRD MARELLA RHOW
LINCENBERG DROOKS NESSIM
LLP
1875 Century Park East, 23rd
Floor
Los Angeles, CA 90067

John A. Yanchunis
Ryan J. McGee
MORGAN & MORGAN P.A.
COMPLEX LITIGATION GROUP
201 N. Franklin Street,
7th Floor
Tampa, FL 33602

**PLEASE TAKE NOTICE** that under 28 U.S.C. §§ 1332, 1441, 1446 and 1453, defendant CONSTELLA INTELLIGENCE, INC. ("Constella"), by and through its undersigned counsel, hereby removes this civil action and all claims and causes of action therein from the Superior Court of New Jersey, Essex County, Law Division, where it is pending under Docket No. ESX-L-007212-24, to the United States District Court for the District of New Jersey, Newark Vicinage.  This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1332(a) and (d).

Constella denies any liability in this case, denies the allegations of Plaintiffs' complaint, and reserves all rights to contest the sufficiency of service of process and/or the existence of personal jurisdiction, and to contest the merits and/or class treatment of all claims in Plaintiffs' complaint or any subsequent pleading.  For

purposes of the jurisdictional requirements for this removal only, the allegations of Plaintiffs' complaint meet the requirements for jurisdiction under 28 U.S.C. §§ 1332 (a) and (d) and demonstrate that removal to this Court is proper.

In support of removal, Constella states the following:

## LOCAL RULE 10.1 STATEMENT

The plaintiffs in this action are Atlas Data Privacy Corporation, Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott Maloney, Justyna Maloney and William Sullivan.  The address for Atlas Data Privacy Corporation is 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302. The remaining plaintiff addresses are unknown to Constella, which is filing this Notice of Removal.  Plaintiffs are represented by Rajiv D. Parikh, Esq., Kathleen Barnett Einhorn, Esq. and Jessica A. Merejo, Esq. of PEM Law LLP, 1 Boland Drive, Suite 101, West Orange, NJ 07502; Ekwan E. Rhow, Esq. and Elliot C. Harvey, Esq. of Bird Marella Rhow Lincenberg Drooks Nessim LLP, 1875 Century Park East, 23rd Floor, Los Angeles, CA 90067; and John A. Yanchunis, Esq. and Ryan McGee, Esq. of Morgan & Morgan Complex Litigation Group, 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

Constella is represented by Lauri A. Mazzuchetti of Kelley Drye & Warren LLP, One Jefferson Road, 2nd Floor Parsippany, New Jersey 07054.

## BACKGROUND

1.      Plaintiffs Atlas Data Privacy Corporation ("Atlas"), as the purported assignee for the claims of 16,854 individuals (the "Alleged Assignors"), Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott Maloney, Justyna Maloney and William Sullivan (collectively, "Plaintiffs"), commenced an action on October 17, 2024, when they filed their Complaint (the "Complaint") in the Superior Court of New Jersey, Essex County, entitled *Atlas Data Privacy Corporation, et al., v. Constella Intelligence, Inc., et al*., Docket No. ESX-L-007212-24 (the "Action").   Under 28 U.S.C. § 1446(a) and Local Civil Rule 5.1(e), a copy of all process, pleadings, and orders filed to date in the State Court Action are attached.  (*See* **Ex. A**.)[1]

2.      The Action alleges that Constella violated N.J.S.A. 47:1A-1, *et seq.*, and N.J.S.A. 56:8-166.1, known as "Daniel's Law."

3.      In their Complaint, Plaintiffs allege that Constella makes available the "name and home address and/or a name and unpublished home telephone number (including the name and address and/or unpublished phone number of the Individual Plaintiffs and [Alleged Assignors])."  (Compl. ¶ 44.) The Complaint alleges that each Individual Plaintiff and the Alleged Assignors sent Constella nondisclosure requests, but that Constella failed to respond or cease "the disclosure or re-disclosure

---

[1] All citations of "Ex." refer to the accompanying declaration of Lauri A. Mazzuchetti, dated November 18, 2024.

on the Internet or the otherwise making available of the protected information." (*Id.* ¶¶ 55–57.)

4.    Atlas purports to assert claims on behalf of the Alleged Assignors; the Complaint alleges that the Alleged Assignors are 16,854 unidentified judges, law enforcement officers, prosecutors, and their family members who allegedly have assigned their claims against Constella to Atlas. (*Id.* ¶¶ 27–28.)

5.    This Notice of Removal is based primarily on the allegations of the Complaint and does not admit the truth of the facts asserted in the Complaint, the validity of Plaintiffs' claims, or the entitlement to any form of relief. Constella expressly denies that Plaintiffs are entitled to any relief, and disputes, among other things, the existence of personal jurisdiction over it.

## LEGAL STANDARD

6.    "[A] defendant seeking to remove a case to a federal court must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) (quoting 28 U.S.C. § 1446(a)). "By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure." *Id.*

7.    "Congress, by borrowing the familiar 'short and plain statement' standard from Rule 8(a), intended to simplify the pleading requirements for removal

and to clarify that courts should apply the same liberal rules to removal allegations that are applied to other matters of pleading." *Id.* (citation, quotation marks, and brackets omitted). Accordingly, "[a] statement 'short and plain' need not contain evidentiary submissions." *Id.* at 84.

## BASIS FOR REMOVAL

8. Constella is entitled to removal of the Action because (A) diversity jurisdiction exists under 28 U.S.C § 1332(a); and/or (B) jurisdiction exists under the Class Action Fairness Act ("CAFA") 28 U.S.C. §§ 1332(d), 1441(a)–(b), and 1453.

## I. Diversity Jurisdiction Exists Over This Action (28 U.S.C. § 1332(a))

9. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a) because: (1) disregarding the collusive assignment of alleged claims to Atlas, the real parties in interest are citizens of New Jersey, and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs.

### A. Complete Diversity of Citizenship Among The Parties

#### 1. Constella's Citizenship

10. As set forth herein, at times relevant to this Notice of Removal, Constella was and is a citizen of Delaware and California.

11. "A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (citing 28 U.S.C. § 1332(c)).

12.    At the commencement of the Action and at the filing of this instant Notice of Removal, Constella was and is a corporation incorporated under the laws of the State of Delaware (*see* **Ex. B.**), with its principal place of business in the State of California.

### 2.    Plaintiffs' Citizenship

#### a.    Individual Plaintiffs

13.    The Complaint alleges that Jane Doe-1 is a police officer working in northern New Jersey.  (Compl. ¶ 18.)  New Jersey law requires that "[e]very member of a police department and force shall be a resident of the State of New Jersey while serving in such position."  N.J.S.A. 40A:14-122.8.3.  Accordingly, Jane Doe-1 is a citizen of New Jersey.

14.    The Complaint alleges that Jane Doe-2 is a correctional police officer who lives in northern New Jersey.  (Compl. ¶ 19.)  Accordingly, Jane Doe-2 is a citizen of New Jersey.

15.    Edwin Maldonado ("Maldonado") alleges that he is an officer in the Plainfield, New Jersey Police Department and is, therefore, a New Jersey citizen. (*Id.* ¶ 20).

16.    Scott Maloney and Justyna Maloney (collectively, the "Maloneys") are a married couple who "live together in New Jersey."  (*Id.* ¶ 21.)  Accordingly, they are New Jersey citizens.  (*See id.*)

17.     William Sullivan ("Sullivan") alleges that he is a veteran of the New Jersey Department of Corrections, and since 2020, has served in various roles in New Jersey.  (*Id.* ¶ 25.)  He is a New Jersey citizen.  (*See id.*)

18.     Maldonado, the Maloneys and Sullivan are collectively referred to herein as the "Individual Plaintiffs."

### b.     Atlas

19.     Atlas is purportedly a Delaware corporation "with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302." (*Id.* ¶ 26.)  It claims to be the "the assignee of the claims of approximately 16,854 individuals who are all 'Covered Persons' under Daniel's Law." (*Id.* ¶ 27.)  For the reasons set forth herein, Atlas's ostensible Delaware citizenship does not destroy the complete diversity underlying this Court's subject matter jurisdiction under 28 U.S.C. § 1332(a).

20.     Plaintiffs may not "impermissibly manufacture[] diversity or ***use*[] *an unacceptable device to defeat diversity*," such as collusive assignments of claims. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 93 (2005) (emphasis added).

21.     Courts may "look to all of the facts and circumstances and ask whether the assignment did destroy diversity jurisdiction," *Att'ys Tr. v. Videotape Comput. Prods., Inc.*, 93 F.3d 593, 600 (9th Cir. 1996), and have "refused to ignore the possibility that a plaintiff may have engaged in a collusive attempt to manipulate the

forum for a particular lawsuit," 3 Wright & Miller, Federal Practice and Procedure § 3641 (3d ed. 2023). Courts can and do "retain[] removed cases on the basis of diversity jurisdiction after they have inquired into the validity of a state law transaction." *Id.*

22.    "Because of their similarity, assignments which destroy diversity and assignments which create diversity should be analyzed under the same standard." *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 186 (5th Cir. 1990); *see id.* at 183–84 (relying on analysis formulated in *Kramer v. Caribbean Mills*, 394 U.S. 823 (1963)). When determining whether assignments are a tactic to defeat or create jurisdiction, courts consider various factors. *See Att'ys Tr.*, 93 F.3d at 595–96; *FNBN-Rescon I LLC v. Ritter,* 2012 WL 3929950, at *4–5 (D. Nev. Sept. 6, 2012). These factors need not all be present but are examined to determine "whether, under a totality of the circumstances, an assignment or transfer is improperly or collusively made." *FNBN*, 2012 WL 3929950, at *5 (citing *Reinhart Oil & Gas, Inc. v. Excel Directional Techs., LLC*, 463 F. Supp. 2d 1240, 1245 (D. Colo. 2006)).

23.    Such factors include (1) whether there were good business reasons for the assignment; (2) did the assignee have a prior interest in the item or was the assignment timed to coincide with commencement of litigation; (3) was there consideration given by assignee; (4) completeness of the assignment; and (5) was there an admission that the motive was to create or destroy jurisdiction. *See E. I.*

*duPont de Nemours & Co. v. Agfa NV*, 2018 WL 7283319, at *20 (E.D. Va. Oct. 30, 2018) (citing *FNBN*, 2012 WL 3929950, at *4).  It is clear that several of these factors are present here, even just from the face of the pleadings.

24.    It appears that Rajiv D. Parikh, Plaintiffs' counsel in this action, registered as a lobbyist for Atlas and may have advocated for these amendments to Daniel's Law.  (*See* **Ex. C**.)

25.    ***Alleged Assignments Have No Legitimate Business Purpose***.  Atlas did not exist when Daniel's Law was passed in November 2020; Atlas incorporated as a Delaware entity on April 27, 2021.  (**Ex. D**.)  When passed, Daniel's Law did not allow for "Covered Persons" to assign their claims and the statute gave courts discretion over whether to impose damages for any violation of the act.  *See* N.J.S.A. 56:8-166.1 (2022).  That changed in 2023, when the law was amended.

26.    It appears that Plaintiffs' counsel and Atlas advocated for changes to the law so that it could send tens of thousands of purported "nondisclosure notices" to hundreds of companies, followed by dozens of lawsuits on behalf of nearly 20,000 individuals in each lawsuit.  Indeed, Atlas has filed approximately over 150 similar lawsuits to date wherein it purports to be acting on behalf of nearly 20,000 alleged assignors in each suit.

27.    ***The Alleged Assignments Are For Litigation Purposes***.  Atlas had no interest in any of these claims before the alleged assignments because it is not a

"Covered Person."  In fact, it did not even register to do business in New Jersey until January 12, 2024.  (*See* **Ex. E**.)

28.    On or about mid-January 2024, Constella began receiving torrents of email messages from Atlas-email addresses.  (*See, e.g.*, Compl. ¶ 55.)  Nine months later, Plaintiffs brought this Action.

29.    ***The Assignments At Issue Are Likely Partial Assignments.***  Upon information and belief, some, if not all, of the 16,854 alleged assignments (if they even occurred) are partial assignments.  It is implausible that the Alleged Assignors would have completely assigned their rights (including to financial recovery and to injunctive relief to their benefit) to Atlas.  Courts view these types of partial assignments critically, and as red flags, for collusive efforts to defeat diversity.  *See Slater v. Republic-Vanguard Ins. Co.*, 650 F.3d 1132, 1135 (8th Cir. 2011) (collecting cases in which "federal courts have disregarded assigned or retained interests" when "considering whether a partial assignment created or destroyed diversity").

30.    Even complete assignments, however, are disregarded amidst circumstances like those presented here.  *See, e.g.*, *Nat'l Fitness Holdings, Inc. v. Grand View Corp. Ctr., LLC*, 749 F.3d 1202, 1208 (10th Cir. 2014) (ruling that even "absolute" transfers in interest will not stop a court from concluding that assignments were "improperly or collusively made" to defeat jurisdiction); *E. I. duPont*, 2018

WL 7283319, at *20–24 (finding even a complete assignment of patent rights "was made improperly to defeat th[e] Court's jurisdiction").

31.    To the extent the Court believes that the citizenship of the Alleged Assignors is relevant, Constella notes that the Complaint alleges that they are all "Covered Persons" under Daniel's Law.  Therefore, Constella believes such persons are citizens of New Jersey.  *See* N.J.S.A. 40A:14-122:8; N.J.S.A. 52:14-7a. Moreover, nothing in the Complaint suggests that the Alleged Assignors are citizens of Delaware or California, where Constella is a citizen.

32.    If the Court has any doubts about its diversity jurisdiction, Constella respectfully requests that the Court allow it to conduct jurisdictional discovery into the nature of and circumstances surrounding the assignments that Atlas allegedly received.  *See, e.g.*, *Lincoln Ben.*, 800 F.3d at 108 (district courts can order jurisdictional discovery); *Hagenbaugh v. Nissan N.A.*, 2022 WL 676277, at *4 (M.D. Pa. Mar. 7, 2022) (allowing a removing defendant to take jurisdictional discovery because the plaintiff challenged allegations in the notice of removal); *see also McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 290 (3d Cir. 2006) (holding that when a party disputes jurisdiction "the court must permit the [invoking party] to respond with rebuttal evidence in support of jurisdiction, and the court then decides the jurisdictional issue by weighing the evidence").

**B.    The Amount In Controversy Exceeds $75,000**

33.    Along with complete diversity, the amount in controversy must exceed $75,000.  28 U.S.C. § 1332(a).  "[S]o long as one plaintiff in this case satisfies the jurisdictional amount, this Court may exercise supplemental jurisdiction over the remaining plaintiffs' claims."  *Burgess v. Bennet*, 2021 WL 1050313, at *5 n.9 (D.N.J. Mar. 19, 2021) (citing 28 U.S.C. § 1367).  When "the plaintiff's complaint does not include a specific monetary demand, the removing defendant need only 'plausibl[y] alleg[e]' the amount in controversy."  *Yucis v. Sears Outlet Stores, LLC*, 813 F. App'x 780, 782 n.2 (3d Cir. 2020) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)) (alterations in original).  Federal jurisdiction is proper "where the plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum," unless "it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount."  *Frederico v. Home Depot*, 507 F.3d 188, 197 (3d Cir. 2007).

34.    Estimates of the amount in controversy in removal petitions are not concessions of liability, nor admissions that plaintiffs are entitled to particular damages.  *Schor v. State Farm Fire and Cas. Ins. Co.*, 2015 WL 1230200, at *4 n.1 (E.D. Pa. Mar. 18, 2015); *see Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."); *McPhail v. Deere*

& *Co.*, 529 F.3d 947, 956 (10th Cir. 2008) ("The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation.").

35.    Atlas claims it is the assignee of 16,854 "Covered Persons" who were allegedly subject to violations of Daniel's Law. (Compl. ¶ 27.) Daniel's Law authorizes at least $1,000 in liquidated damages for "each violation" of the act. (*Id.* ¶ 54); *see* N.J.S.A. 56:8-166.1(c)(1). Atlas therefore alleges statutory damages that, under any calculation of violations, dwarf the $75,000 threshold.

36.    Atlas may protest, arguing that if the Court should disregard its citizenship for diversity purposes, it should look not to the aggregated assignments, but to the damages of the individual Alleged Assignors. The Court should reject that position because "citizenship" for diversity purposes is distinct from the amount in controversy requirement. A valid assignment under state law may aggregate the claims (and the value of them) which a plaintiff has the right to bring, but "[t]he existence of federal jurisdiction is a matter of federal, not state law." *Kramer*, 394 U.S. at 829. While Constella disputes the validity of the assignments alleged, Plaintiffs' Complaint alleges that Atlas obtained valid assignments.

37.    The amount in controversy requirement, however, is satisfied even if the Court were to disregard Atlas's aggregated claims because the Individual Plaintiffs meet that threshold themselves. Each one seeks (1) "actual damages, not

less than liquidated damages under Daniel's Law, at '$1,000 for each violation,'"
(2) "an additional amount in punitive damages, to be determined by the Court, for
'willful noncompliance' as allowed under Daniel's Law," (3) "reasonable attorneys'
fees," and (4) "injunctive relief."  (Compl. at 25.)   Adding together potential
statutory, actual, and punitive damages, as well as the value of injunctive relief and
attorneys' fees, each Individual Plaintiff has put more than $75,000 in controversy.

### 1.    Actual / Statutory Damages

38.    The Individual Plaintiffs seek "actual damages, not less than liquidated
damages under Daniel's Law, at $1,000 for each violation."  (*Id.*)

39.    The Individual Plaintiffs allege that violations of Daniel's Law
occurred due to the alleged disclosure of their respective names plus (1) home
addresses and/or (2) unlisted home telephone numbers.  (*See, e.g.*, *id.* ¶¶ 31, 57–58,
65–66.)  They allege that violations occurred through three types of purported
disclosure: (1) disclosure on the Internet, (2) re-disclosure on the Internet and (3)
otherwise making protected information available.  (*Id.*)  Because no case law exists
interpreting a "violation" under Daniel's Law, the Complaint can be read to
plausibly allege (although Constella disputes this) that each plaintiff suffered a new
violation each time that Constella allegedly did not comply with Daniel's Law.

40.    For instance, Sullivan alleges that he sent Constella an email notice on
January 27, 2024 (*id.* ¶ 56) and brought this suit on October 17, 2024—nearly eight

months (250 days) after the ostensible deadline to comply with Daniel's Law. Thus, the Complaint can be plausibly read that Sullivan has alleged (at least) 250 violations of Daniel's Law, totaling $250,000 in just the mandatory liquidated damages. *See, e.g.*, *Karnes v. Kankakee Hosp., LLC*, 2021 WL 12171751, at *3–4 (C.D. Ill. Sept. 25, 2021) (denying a motion to remand in a case under the Illinois Biometric Information Privacy Act where the plaintiff plausibly alleged more than $75,000 in controversy based on allegations that plaintiff was employed by the defendant for 35 days and had daily collection of her biometrics).

41.    Further, Plaintiffs brought this suit against Constella along with "Richard Roes 1–10 and ABC Companies 1–10,"—totaling 21 defendants—whom they allege "were also involved with the violations described in this Complaint." (Compl. ¶ 42.) Because Plaintiffs' "claims are against multiple defendants who are jointly liable to the plaintiff," the Court may aggregate those claims to reach the amount in controversy threshold. *DePrizio v. LTS Realty Co.*, 2006 WL 8449808, at *4 (M.D. Pa. Aug. 24, 2006) (citing Vol. 15 Moore's Federal Practice, § 102.1089(2) (Matthew Bender 3d. 2000)).

42.    Each individual Plaintiff therefore alleges—at a minimum—$21,000 in "liquidated damages."

43.    Those liquidated damages do not account for any other "actual damages" that Plaintiffs may have suffered. The Individual Plaintiffs allege

16

significant actual damages; for example, they allege that exposure of their information caused them apprehension and concern. (*See, e.g.*, Compl. ¶¶ 18–19 (alleging that the Individual Plaintiffs' and their colleagues' "security and privacy is a frequent topic of discussion and concern")); *Yucis*, 813 F. App'x at 782 n.2 (holding allegations of "pain, suffering, embarrassment, and humiliation" resulting from sexual harassment, as well as incurred attorneys' fees plausibly alleged more than $75,000 in controversy).

### 2.    Punitive Damages

44.    "[P]unitive damages . . . are part of the amount in controversy calculation." *Atl. Util. Trailer Sales Inc. v. Harco Nat'l Ins. Co.*, 2020 WL 3287129, at *2 (D.N.J. June 18, 2020) (citing *Frederico*, 507 F.3d at 199).  Good faith claims for punitive damages "will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum." *Huber v. Taylor*, 532 F.3d 237, 244 (3d Cir. 2008). Under New Jersey law, punitive damages max out at "five times the liability of that defendant for compensatory damages or $350,000, whichever is greater." *Harco Nat'l Ins. Co.*, 2020 WL 3287129, at *2 (quoting N.J.S.A. 2A:15-5.14 (2014)).

45.    By seeking punitive damages, each Plaintiff plausibly puts at issue at least $350,000.

### 3.    Attorneys' Fees

46.    Daniel's Law states that the Court may award "reasonable attorney's fees." N.J.S.A. 56:8–166.1(c)(3).   As such, this Court "must consider potential attorney's fees . . . if such fees are available to successful plaintiffs under the statutory cause of action." *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997) (citation omitted).  "The Third Circuit has noted that attorney's fees can be estimated to be as high as 30% of the final judgment." *Rodriguez v. Burlington Cnty. Corr. Dep't.*, 2015 WL 790521, at *2 (D.N.J. Feb. 25, 2015) (citing *Frederico*, 507 F.3d at 199).

47.    As outlined above, the Complaint plausibly alleges compensatory damages and punitive damages that already far exceed the $75,000 threshold for each individual plaintiff.  Increasing those damages by another 30 percent to account for attorneys' fees leaves no doubt that the amount in controversy is satisfied.

### 4.    Injunctive Relief

48.    Daniel's Law permits to the Court to award any "equitable relief" that it "determines to be appropriate." N.J.S.A. 56:8-166.1(c)(4).  Plaintiffs request such "equitable relief" including "the appointment of a qualified independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law." (Compl. at 25.)

49.     When assessing the value of injunctive relief, the inquiry concerns the value to the plaintiff.  *See USAA Cas. Ins. Co. v. CIT Bank*, 2018 WL 3213324, at *4 (D.N.J. May 15, 2018) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)).  Here, Plaintiffs' requested equitable relief includes the costs of the "independent expert" that Plaintiffs request.  These costs alone would likely exceed $75,000.  When combined with compensatory damages, punitive damages, and attorneys' fees, the value of prospective injunctive relief doubtless exceeds the amount in controversy threshold.

*        *        *

50.     Accordingly, Constella plausibly pleads here that each Plaintiff has an amount in controversy of more than $75,000.  Through both Atlas as an alleged assignee/aggregator of claims and supplemental jurisdiction over the other Plaintiffs and/or through each Plaintiff standing alone, the amount in controversy for diversity jurisdiction is satisfied.

51.     Because the parties are completely diverse and the amount in controversy exceeds $75,000, the requirements of diversity jurisdiction are satisfied.

## II.    In the Alternative, this Court Has Jurisdiction Under CAFA

52.     In the alternative, this Court has jurisdiction because this matter is either a "class action" or "mass action" under CAFA.

53.    "Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court." *Dart*, 574 U.S. at 89 (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013)).  Accordingly, "CAFA's 'provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'"  *Id.* (quoting S. Rep. No. 109–14, at 43 (2005)).

54.    Practically, "CAFA dramatically expanded the role of the federal judiciary in class action litigation, and expressed a clear preference for qualifying class actions to be entertained in federal forums."  *Portillo v. Nat'l Freight, Inc.*, 169 F. Supp. 3d 585, 589 (D.N.J. 2016).  Because "the language of CAFA favors federal jurisdiction over class actions," "no antiremoval presumption attends cases invoking CAFA[.]"  *Id.* at 592 n.9 (quoting *Dart*, 574 U.S. at 89).

### A.    Class Action Requirements Under CAFA

55.    CAFA confers on district courts original jurisdiction over any civil action in which three requirements are met: (1) an amount in controversy that exceeds $5,000,000, as aggregated across all individual claims; (2) minimally diverse parties; and (3) that the class consist of at least 100 or more members ("numerosity requirement").  *Standard Fire*, 568 U.S. at 592 (citing 28 U.S.C. §§ 1332(d)(2), (d)(5)(B)).  In addition, to be considered a "class action" under CAFA, the suit must be "filed under rule 23 of the Federal Rules of Civil Procedure or

similar state statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).

56.    This suit satisfies all of CAFA's requirements for federal jurisdiction over a class action because (1) there is minimal diversity between the parties; (2) the aggregate amount-in-controversy exceeds $5,000,000; (3) the putative class exceeds 100 members; and (4) the suit is effectively filed as a representative action that implicates Rule 23, and/or under a state-law analogue to Rule 23.

### 1.    Minimal Diversity

57.    CAFA requires minimal diversity among the parties, meaning at least one class member must be a citizen of a different state from at least one defendant. 28 U.S.C. § 1332(d)(2). Under CAFA, a corporation is a citizen of the state "by which it has been incorporated" and the state "where it has its principal place of business." *Id.* § 1332(c)(1).

58.    Because Constella's citizenship (Delaware and California) is different from the citizenship of at least the Individual Plaintiffs (New Jersey) and the Alleged Assignors, the minimal diversity requirement is satisfied.

### 2.    Aggregate Amount In Controversy

59.    CAFA requires that the amount-in-controversy exceed $5,000,000 for the entire putative class in the aggregate, exclusive of interest and costs.  *See id.* § 1332(d)(2).

60.    As explained, Plaintiffs allege at minimum $1,000 in liquidated damages against Constella through Atlas's 16,854 Alleged Assignors, as well as the individual claims of Doe 1, Doe 2, and the Individual Plaintiffs.  (*See supra* ¶¶ 35–50.)  This satisfies the $5,000,000 CAFA minimum, without even considering additional actual damages, punitive damages, attorneys' fees, injunctive relief *or* the allegations against the additional 20 defendants.

### 3.    Class Action Numerosity

61.    CAFA requires that "the number of members of all proposed plaintiff classes in the aggregate" must be at least 100 members.  28 U.S.C. § 1332(d)(5).  In counting such members, "the term 'class members' means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action."  *Id.* § 1332(d)(1)(D).  The numerosity requirement, for jurisdictional purposes, is satisfied here.

62.    "[T]he Third Circuit found that partial assignees can be counted as class members when evaluating whether a class meets Rule 23's numerosity requirement."  *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, 2020 WL 5211035, at *10 (E.D. Pa. Sept. 1, 2020) (citing *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 251–52 (3d Cir. 2016)).

63.    Here, the proposed absent class consists of 16,854 members.  Thus, the numerosity requirement for the purposes of CAFA jurisdiction is satisfied.

22

### 4.    Applicable Law

64.    Under CAFA, "the term 'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).

65.    "If a complaint does not satisfy CAFA's jurisdictional requirements on its face, [courts] must cut through any pleading artifice to identify whether the case is ***in substance*** an interstate class action."  *Erie Ins. Exch. v. Erie Indem. Co.*, 68 F.4th 815, 819 (3d Cir. 2023) (emphasis added).  The U.S. Supreme Court has warned "that courts must be careful not to 'exalt form over substance' when determining whether a case satisfies CAFA's jurisdictional requirements.'"  *Id.* at 819–20 (quoting *Standard Fire*, 568 U.S. at 595); *see also Williams v. Emps. Mut. Cas. Co.*, 845 F.3d 891, 901 (8th Cir. 2017) ("[A]llowing class-action plaintiffs to avoid federal jurisdiction simply by omitting explicit reference to the class-action rule they intend to proceed under would promote the kind of procedural gaming CAFA was enacted to prevent."); *Badeaux v. Goodell*, 358 F. Supp. 3d 562, 567 (E.D. La. 2019) (citing *Williams*, 845 F.3d at 901 ("A lawsuit resembling a class action will not escape CAFA jurisdiction simply because it omits the words 'class action' or does not include the state rule or statute under which it proceeds as a class action.")).

23

66.     Here, the Complaint is "in substance a class action, . . . notwithstanding [Plaintiffs'] artificial attempt to disguise the true nature of the suit." *Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*, 731 F.3d 740, 742 (7th Cir. 2013) (denying remand under CAFA where plaintiff, an assignee of class rights, unsuccessfully attempted to omit reference to Rule 23 in the pleadings to avoid federal jurisdiction). Atlas (and the Individual Plaintiffs) purport to bring claims on behalf of 16,854 individuals (*see supra* ¶ 35); alleges commonality among the claims (*see* Compl. ¶¶ 48–61 ("Facts Common to All Counts")).[2]   Further, although Plaintiffs do not cite any joinder rule, the Complaint does not demonstrate how Plaintiffs could join 16,854 claims in a single suit, absent the class action mechanism.

67.     New Jersey Court Rule 4:32 provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

68.     Courts have held that a state-law analogue statute or rule is, in effect, a class action, where the rule "resembles" an analogue of Rule 23. *See, e.g.*, *Pac.*

---

[2] Constella does not concede that Plaintiffs can establish any element of class certification.

*Coast Fed'n of Fishermen's Ass'n, Inc. v. Chevron Corp.*, 2023 WL 7299195, at *1 (N.D. Cal. Nov. 1, 2023) ("The complaint thus pleads a representative action authorized by section 382 of the California Code of Civil Procedure," which "allows a plaintiff to sue and seek relief on behalf of absent parties," and thus "resembles a damages class action under Rule 23 of the Federal Rules of Civil Procedure.").

69.    Thus, all requirements for CAFA jurisdiction over a class action are met.

### B.    Mass Action Requirements Under CAFA

70.    In the alternative, or in addition, to finding that this is a class action under CAFA, removal is proper because the instant case is a "mass action" under CAFA.

71.    "Congress created the mass action in 2005," when it passed CAFA, "a mostly jurisdictional statute." *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 318 (3d Cir. 2022). "CAFA's drafters feared that large-scale state litigation—deemed mass actions and brought under non-class joinder and consolidation rules—would evade CAFA's removal provisions simply because [such] litigation was not pursued under class action rules. [] So Congress included mass-action provisions in CAFA." *Id.* (citations and quotation marks omitted).

72.    CAFA defines a "mass action" as

> any civil action (except a civil action within the scope of
> section 1711(2)) in which monetary relief claims of 100 or

25

> more persons are proposed to be tried jointly on the ground
> that the plaintiffs' claims involve common questions of
> law or fact, except that jurisdiction shall exist only over
> those plaintiffs whose claims in a mass action satisfy the
> jurisdictional amount requirements under [§ 1332(a)].

28 U.S.C. § 1332(d)(11)(B)(i).  In short, "mass actions are deemed to be class actions

removable under 28 U.S.C. § 1332(d)(2)–(10) if they otherwise meet the provisions

of those paragraphs."    *OptumRX*, 43 F.4th at 319 (citing 28 U.S.C. §

1332(d)(11)(A)).

73.    "In extending CAFA to large individual state court cases that are

functionally indistinguishable from class actions, the mass action provision prevents

plaintiffs' counsel from avoiding CAFA's expanded federal jurisdiction by simply

choosing not to seek class certification."  *Lowery v. Ala. Power Co.*, 483 F.3d 1184,

1198 n.32 (11th Cir. 2007) (quoting S. Rep. No. 109–14 at 47 (2005), *reprinted in*

2005 U.S.C.C.A.N. 3, 44 (noting that "mass actions are simply class actions in

disguise")).

74.    Here, federal jurisdiction exists under CAFA for a mass action that

satisfies (1) the class action requirements of (a) minimal diversity and (b) the

$5,000,000 *aggregate* amount-in-controversy; (2) numerosity for a mass action; and

(3) the $75,000 *individual* amount-in-controversy requirement.

75.    Under CAFA, "the term 'mass action' means any civil action . . . in

which monetary relief claims of 100 or more persons are proposed to be tried jointly

on the ground that the plaintiffs' claims involve common questions of law or fact."

28 U.S.C. § 1332(d)(11)(B)(i).

76.    "The question is not whether 100 or more plaintiffs answer a roll call

in court, but whether the 'claims' advanced by 100 or more persons are proposed to

be tried jointly." *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th

Cir. 2008).    "Where a single complaint joins more than 100 separate claims

involving common questions of law and fact, there is a presumption that those

plaintiffs have implicitly proposed a joint trial." *Ramirez v. Vintage Pharms., LLC*,

852 F.3d 324, 329 (3d Cir. 2017).

77.    Here, Atlas alleges that it is the assignee for "monetary relief claims of

100 or more persons," 28 U.S.C. § 1332(d)(11)(B)(i)—specifically, the "monetary

relief claims" of 16,854 Assignors.  (*See* Compl. ¶¶ 27, 59.)  Doe 1, Doe 2, and the

Individual Plaintiffs also each allege "monetary relief claims."

78.    In the Third Circuit,

> [i]t is blackletter law that "the assignee steps into the shoes
> of the assignor." 29 Williston on Contracts § 74:56 (4th
> ed. 1999) ("Simply stated, the assignee steps into this pair
> of the assignor's shoes absolutely, and, if the shoes are
> dirty, then that dirt sullies the assignee no less than it did
> the assignor."). As a result, "[a]n assignee's right against
> the obligor is subject to all . . . defenses thereto . . . ."
> Restatement (First) of Contracts § 167(1) (1932). These
> defenses include not only defenses to the merits of the
> claim, but defenses based on where and how the claims
> may be prosecuted.

*Winn-Dixie Stores, Inc.*, 2020 WL 5211035, at *11.

79.    Accordingly, "the Third Circuit found that partial assignees can be counted as class members when evaluating whether a class meets Rule 23's numerosity requirement." *Id.* at *10 (citing *In re Modafinil*, 837 F.3d at 251–52 *as amended* (3d Cir. Sept. 29, 2016) ("[P]artial assignees are appropriately considered to be members of a class.")); *see also id.* at 252 ("*Fine Paper Litigation* [, 632 F.2d 1081, 1089 (3d Cir. 1980)] envisioned the class action mechanism as a proper tool for partial assignees to participate in the lawsuit[.]").

80.    This case does not involve one plaintiff suing on behalf of a group of unnamed individuals. *See, e.g.*, *Mississippi ex rel. Hood v. AU Optronics Corp*., 571 U.S. 161 (2014) (involving *parens patriae* action brought by state attorney general on behalf of state's citizens); *Erie Ins. Exch.*, 68 F.4th 815 (involving unincorporated association bringing suit "to benefit all members of" the association).

81.    Rather, in this case, Atlas brings each claim for relief on behalf of 16,854 separate individuals, the Alleged Assignors.    (*See* Compl. ¶¶ 27, 59.) Because Atlas "steps into the shoes of" each Alleged Assignor, *see* 29 Williston on Contracts § 74:56, Atlas's "right against" any defendant is "subject to all defenses" that any defendant may have had against any Assignor, including "defenses based on where and how the claims may be prosecuted." *Winn-Dixie Stores*, 2020 WL

5211035, at *11 (citing Restatement (First) of Contracts § 167(1) (1932)) (ellipses omitted; emphasis added).

82.    That Atlas did not name each of the 16,854 Alleged Assignors in the case caption does not change the fact that Atlas is not suing on its individual behalf, but rather for the benefit of each specific Alleged Assignor.

83.    As indicated above, each individual's alleged claim appears to exceed $75,000. (*See supra* ¶¶ 35–51.)

### C.    None of the CAFA Exceptions Apply

84.    CAFA provides two mandatory exceptions and one discretionary exception to the application of federal jurisdiction for class actions.  *See* 28 U.S.C. §§ 1332(d)(3)–(4).  None of these exceptions applies here.  Each CAFA exception requires, as a starting point, an in-state defendant.  *Id.* (requiring either "significant relief" to be sought from an in-state defendant (local controversy exception), or requiring the "primary defendant" to be an in-state one ("home state" and discretionary exceptions)).

85.    Here, Constella is not a citizen of New Jersey, and the citizenship of the unidentified Defendants is disregarded.  Thus, none of the CAFA exclusions apply.

86.    Further, none of the exceptions for federal jurisdiction over a "mass action" apply here.  *See id.* § 1332(d)(11)(B)(ii).  Specifically, none of the claims herein were joined upon motion of a defendant, the claims are not asserted on behalf

29

of the public, and the claims in the Complaint have not been consolidated or coordinated solely for pretrial proceedings.

87.    In addition, the claims in this action do not arise from a single "event or occurrence" in New Jersey that allegedly resulted in injuries in New Jersey or in States contiguous to New Jersey.

88.    Accordingly, none of the class or mass action exceptions to CAFA jurisdiction apply here.

## REMOVAL IS PROCEDURALLY PROPER

89.    Section 1446 also sets forth certain procedural requirements for removal, all of which are met here:

90.    ***Removal Is Timely***.  A notice of removal may be filed within 30 days after the defendant receives a copy of the initial pleading, motion, or other paper from which it may be ascertained that the case is removable.  *Id.* § 1446(b).  This case was filed on October 17, 2024, and served upon Constella on October 21, 2024. (*See* **Ex. A**.)  This Notice of Removal is thus timely filed.

91.    ***Removal to Proper Court***.  This Court is part of the "district and division within which" this action was filed—Essex County, New Jersey.  *See* 28 U.S.C. § 1446(a).

92.    ***Pleading and Process***.  Under 28 U.S.C. § 1446(a), a "copy of all process, pleadings, and orders served upon" Constella are attached to this Notice of

Removal.  (*See* **Ex. A**.)  Constella has not answered or otherwise filed a response to the Complaint.

93.    ***Notice to State Court***.  A copy of this Notice of Removal is being filed with the Clerk of the Superior Court of New Jersey, Law Division, Essex County, and is being served on counsel of record, consistent with 28 U.S.C. §§ 1446(a), (d).

94.    Constella hereby reserves all defenses and objections to the Complaint, including but not limited to: lack of personal jurisdiction, improper venue, *forum non conveniens*, insufficiency of process, insufficiency of service of process, failure to join necessary parties, lack of standing, and failure to state a claim.

**WHEREFORE**, Constella removes this action to this Court for further proceedings according to law.

Dated: November 18, 2024                          Respectfully Submitted,

*/s/ Lauri A. Mazzuchetti*
Lauri A. Mazzuchetti
Whitney M. Smith
Aaron J. Gold
KELLEY DRYE & WARREN LLP
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Tel: (973) 503-5900
Fax: (973) 503-5950
lmazzuchetti@kelleydrye.com
wsmith@kelleydrye.com
agold@kelleydrye.com

*Counsel for Defendant*
*Constella Intelligence, Inc.*

31

## LOCAL CIVIL RULE 11.2 STATEMENT

Under Local Rule 11.2, it is hereby stated that the matter in controversy between the parties is not subject to any other action pending in any other Court or of a pending arbitration proceeding other than the state court action removed by this Notice: ESX-L-007212-24 in the Superior Court of New Jersey, Law Division, Essex County.

Dated: November 18, 2024                    */s/ Lauri A. Mazzuchetti*
                                            Lauri A. Mazzuchetti

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2024, the foregoing was filed electronically. The parties may access this filing through the Court's system. A copy was served via U.S. mail and email on the following:

Rajiv D. Parikh
Kathleen Barnett Einhorn
Jessica A. Merejo
PEM LAW LLP
1 Boland Drive, Suite 101
West Orange, NJ 07052

Ekwan E. Rhow
Elliott C. Harvey Schatmeier
BIRD MARELLA RHOW LINCENBERG
DROOKS NESSIM LLP
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067

John A. Yanchunis
Ryan J. McGee
MORGAN & MORGAN P.A.
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7thFloor
Tampa, FL 33602
jyanchunis@forthepeople.com
rmcgee@forethepeople.com

*/s/ Lauri A. Mazzuchetti*
Lauri A. Mazzuchetti